Dear Senator Tinnin:
This letter is in response to your question asking as to the effect that House Joint Resolution No. 87 of the 79th General Assembly has with respect to certain bills now pending before the General Assembly relating to retirement systems.
House Joint Resolution No. 87 as truly agreed to and finally passed and adopted by the voters and which is presently effective provides as follows:
"JOINT RESOLUTION
 Submitting to the voters of Missouri, an amendment to article VII of the constitution of Missouri relating to public officers.
 That at the next general election to be held in the state of Missouri, on Tuesday next following the first Monday in November, 1978, or at a special election to be called by the governor for that purpose, there is hereby submitted to the voters of this state, for adoption or rejection, the following amendment to article VII of the constitution of the state of Missouri:
 Section 1. Article VII, constitution of Missouri, is amended by adding thereto one new section to be known as section 14, to read as follows:
 Section 14. The legislative body which stipulates by law the amount and type of retirement benefits to be paid by a retirement plan covering elected or appointed public officials or both, shall, before taking final action of any substantial proposed change in future benefits, cause to be prepared a statement regarding the cost of such change. Such statement of cost shall be prepared by a qualified actuary with experience in retirement plan financing and such statement shall be available for public inspection. The general assembly shall provide by law applicable standards and requirements governing the preparation, content, and disposition of such statement of cost."
We first of all wish to point out that it is our view that it would be inappropriate for this office to attempt to apply this constitutional amendment to specific bills which are presently pending before the General Assembly. To do so would involve us in expressing a view of the constitutionality of a law we might be called on to defend from attack in the courts. Rather, we believe that we should set out what we think to be controlling principles in applying this amendment.
The first question which appears to be raised by the language contained in the amendment is whether public employees who are not public officers are included within the terminology "elected or appointed public officials".
As can be seen from the title given this joint resolution such title relates to an amendment to Article VII of the Constitution of Missouri relating to public officers. The specific language as we have noted refers to "elected or appointed public officials". Our review of the legislative history indicates that the title of the resolution as originally introduced referred to an amendment to Article III of the Constitution of Missouri relating to the legislative power of the General Assembly. Likewise, the body of the bill referred to Article III and would have purported to amend Article III by adding a new section thereto relating to "elected and appointed public officials and other public employees". It is clear from the history of this joint resolution that the language "and other public employees" was deleted before the resolution was truly agreed to and finally passed and adopted by the voters. Accordingly the legislative history indicates quite clearly that the amendment as adopted was intended to apply only to plans covering elected or appointed public officials or both, and not persons who are merely public employees but not elected or appointed public officials.
It is our view that the term "public official" is synonymous with "public officer". This seems especially clear here because the title to the amendment refers to "public officers". While there have been various definitions of "public officers" for myriad purposes we believe that the following holding of the Missouri Supreme Court En Banc in State ex rel. Webb v. Pigg,249 S.W.2d 435, 441 (Mo. 1952) is worthy of note:
 "`The ultimate test appears to be whether or not, to the person in question, there has been delegated some substantial part of the sovereign power, to be `independently exercised with some continuity and without control of a superior power other than the law.' Kirby v. Nolte, supra, 164 S.W.2d loc. cit. 8.'"
 "In recent opinions of this court special emphasis has been placed upon whether the particular individual in question performs his duties independently and without control of a superior power other than the law, that is, whether he is endowed by law with the power and authority to use his own judgment and discretion in discharging the sovereign functions of government which have been vested in him by statute and which functions are to be exercised by him for the benefit of the public."
Despite the narrow interpretation given the term "public officer" in the Webb case, the case cited therein, Kirby v. Nolte
indicates a lack of uniformity in the court decisions respecting the definition of "public officer" in a constitutional sense. In light of the nature of the amendment we are of the view that the broadest definition should be given to the term "public official", all doubt being resolved in the public's favor.
Clearly many public officials are responsible at least to some extent to other public officials. The true question to be resolved then is not whether the official is entirely independent of a higher power but whether the official exercisesany sovereign authority without supervision.
The second question which comes to mind is whether the word "substantial" as used in the first sentence is to be given a restrictive or a broad meaning. The word "substantial" has been given many meanings. 40 Words Phrases "Substantial" p. 757 et seq. It is our view however that an extremely restrictive definition of the word "substantial" would not be consistent with the purpose of the voters in enacting such amendment. Thus we believe that the meaning given the word by the Supreme Court of the State of Washington in In Re Krause's Estate21 P.2d 268, 270 (1933) is the meaning which should be adopted, stated as follows:
 "`Substantial' is an adjective meaning something worthwhile as distinguished from something without value or merely nominal. Webster New International Dictionary. 3 Bouvier's Law Dictionary (3rd Ed.)."
Thus it is our view that it would be difficult to imagine any legislation which effected a change in benefits payable to public officials which would not be essentially "substantial".
The next question arises as to whether the statement of cost is required to show the cost of benefits to both public employees as well as to public officials when the change in benefits affects both public officials and public employees. It is our view that the provision in the amendment referring to "any substantial proposed change in future benefits" refers to future benefits of elected or appointed officials and therefore limits the statement regarding cost to the cost of the benefits to such officials except to the extent that such costs cannot be appropriately severed from the cost of such benefits to other public employees.
An additional question which arises is whether immediate implementation of this amendment by the General Assembly is necessary in order for the amendment to be effective. The amendment clearly provides that the General Assembly shall provide by law applicable standards and requirements governing preparation, content and disposition of such statements of cost. However it is clear that the requirements of the amendment could not be defeated by the failure of the General Assembly to act, and to that extent it is our view that such amendment is self-enforcing. It is also our view that the General Assembly may impose requirements with respect to such retirement plans which are more comprehensive than the requirements found in the amendment. Thus the General Assembly may, by appropriate legislation, include such plans covering public employees in addition to public officials and may require actuarial statements with respect to any change in benefits.
Very truly yours,
 JOHN ASHCROFT Attorney General